# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| David Lynn Hieb, )<br>)<br>        Petitioner, )<br>) <br>    vs. )<br>)<br>Chad Pringle, Warden, )<br>)<br>        Respondent. ) | Case No. 3:17-cv-31<br><br>**REPORT AND RECOMMENDATION** |

David Lynn Hieb (Hieb) petitioned for habeas relief under 28 U.S.C. § 2254. (Doc. #1). After preliminary review, the court ordered service on the respondent. (Doc. #3). The respondent filed a "limited" motion to dismiss,[1] contending that Hieb's petition is untimely, (Doc. #6), and Hieb has responded to that motion, (Doc. #10).

## Summary of Recommendation

Hieb alleges his 2005 guilty plea can be construed only as an admission to a crime—conspiracy to commit an unintentional murder—which the North Dakota Supreme Court would now find to be incognizable.[2] Hieb contends that the factual basis for his guilty plea supported only conspiracy to commit an unintentional murder—felony murder—and not conspiracy to commit an intentional murder. Additionally, under the circumstances of his case, Hieb contends that since the charging

---

[1] Respondent requests that he be permitted to file an answer with supplemental pleadings and other motions if his limited motion to dismiss is denied. (Doc. #6, pp. 1-2).

[2] The court recently decided a case raising similar issues. See Keller v. Pringle, No. 3:15-cv-107, 2016 WL 3960428 (D.N.D. June 27, 2016) (Report and Recommendation); Keller v. Pringle No. 3:15-cv-107, 2016 WL 3962878 (D.N.D. July 21, 2016) (Order Adopting Report and Recommendation). That case is currently on appeal before the Eighth Circuit. See Keller v. Pringle, 8th Cir. Case No. 16-3175.

document did not refer to a specific type of murder, it can only be construed as charging him with conspiracy to commit an unintentional murder—either murder under circumstances manifesting an extreme indifference to the value of human life or felony murder.

This court concludes, however, that claims concerning Hieb's guilty plea are barred by the statute of limitations and that he is not entitled to equitable tolling of the one-year limitation period. Hieb's other asserted claims are not cognizable in a federal habeas petition. Accordingly, Hieb's petition for habeas relief should be dismissed.

## Background

On September 28, 2005, Hieb pleaded guilty to conspiracy to commit murder as charged in a Second Amended Information.[3] (Doc. #10-8, p. 5). The Second Amended Information charged:

> Count 1: **CONSPIRACY TO COMMIT MURDER** in violation of N.D.C.C. § 12.1-06-04 and 12.1-16-01, in that on or about November 3, 2004[,] the above-named defendant agreed with one or more persons to engage in or cause conduct which, in fact, constituted the offense of Murder, and any one or more of such persons committed an overt act to effect an objective of the conspiracy, to wit: that during said time period, the defendant **DAVID L. HIEB**, agreed with a number of individuals including, but not limited to, James W. Thompson III [(Thompson)] and/or Travis A. Jenkins [(Jenkins)] to murder Orvin G. Berg [(Berg)] and any one or more individuals took an overt act to effect an object of that conspiracy.

---

[3] The Second Amended Information was identical to the original Information. (See Doc. #1-2). The First Amended Information's Count 1 was identical to that in the original Information and in the Second Amended Information, but the First Amended Information also included Count 2—charging murder in violation of North Dakota Century Code section 12.1-16-01(c) (felony murder)—alleging that Hieb killed Berg during the course of a robbery. (See Doc. #1-3). The Second Amended Information did not charge felony murder.

(Doc. #1-4). At that change of plea hearing, the state court deferred consideration of the factual basis for Hieb's guilty plea until the sentencing hearing. (Doc. #10-8, p. 8).

At the sentencing hearing, the prosecutor presented a factual basis which differed from that presented by defense counsel. The prosecutor described conflicting versions of the events that led to Berg's death, contending that either version of the facts was a sufficient basis for a guilty plea. The prosecutor first described what Hieb had told law enforcement when Hieb reported that he had been stabbed during an altercation over a drug debt:

> Hieb . . . explained that he agreed with Thompson to set up Berg for the purpose of beating up Berg so he would leave Jenkins alone. According to Hieb, the plan called for Hieb to put Berg in a headlock and take him to the ground. During the struggle, Hieb was stabbed by Berg, the decedent, and then Thompson hit Berg on the head with a hammer. That's Hieb's version of events.

(Doc. #10-9, p. 6). The prosecutor's alternate factual basis summarized what another individual had reported to law enforcement—that "Jenkins, Thompson, and Hieb all devised a plan to both rob and murder Berg." Id. at 7. Additionally, the prosecutor stated that "Jenkins gave a statement to [law enforcement] indicating Hieb . . . had come up with the idea of killing Berg" and that Jenkins reported that "Hieb was the one who struck Berg with a hammer." Id. at 7-8. The prosecutor further stated that Thompson reported to law enforcement that "he had no knowledge of a plan to kill Berg" but that "Hieb was the one who used the hammer to kill Berg." Id. The prosecutor concluded:

> In any case, we have multiple witnesses saying that it was Hieb's idea to do the murder, that they'd devised it in advance, that they went there, and multiple witnesses saying that Hieb was in fact the one holding the hammer and striking Berg. Those are the essential facts as the State presents them today.

Id. at 8.

Although the Information to which Hieb pled charged <u>conspiracy to commit murder</u>, defense counsel referred to a sufficient factual basis for a plea to <u>conspiracy to commit felony murder</u>:

> Your Honor, as I've indicated in my sentencing brief, we agree there's a factual basis to the allegation of <u>Conspiracy to Commit Felony Murder</u>. My client did admit to law enforcement after receiving and waiving Miranda that he was involved in a plan to rob the victim. But in the course of that plan the victim was injured, and now we know ultimately killed. There's no question that would constitute <u>felony [m]urder</u> under North Dakota law, and he did elect to plead guilty <u>on those facts</u>. And, we do concur there's a factual basis.

<u>Id.</u> at 8-9 (emphasis added).

At no point did Hieb himself admit to any factual basis on the record; rather, he admitted it only though defense counsel. In argument, defense counsel minimized Hieb's involvement, stating he "identifie[d] the other two people involved in this with him, and he also implicate[d] himself in this plan to <u>rob</u> [Berg] and the <u>assault</u>, and what we now know to be the death of Orvin Berg." <u>Id.</u> at 23 (emphasis added). Defense counsel noted that "[t]here is a substantial dispute in the facts in this case" and that all of the others involved are related by blood or marriage or have "known each other for a long, long period of time." <u>Id.</u> at 26-27. He further noted that Hieb had met Thompson the day before the murder and had met Jenkins "just two weeks before this all happened." <u>Id.</u> at 26-27. Defense counsel argued that it was "very easy for [the others] to point the finger at [Hieb] and say this was his idea, he did everything." <u>Id.</u> at 27.

Defense counsel stated that Berg's blood was found only on the bottom of Hieb's shoe, and he argued that the blood evidence was "certainly consistent with [Hieb's] version that Mr. Thompson [was] the one wielding the hammer, and not [Hieb]." <u>Id.</u> at

4

27-28. Defense counsel discussed an ongoing dispute between Jenkins and Berg and reiterated that Hieb had agreed only to rob Berg:

> The victim in this case was a drug dealer that had an ongoing relationship with Travis Jenkins, and I don't mean to suggest that drug dealers['] lives are worth less than other lives, but the truth is, one of the factors the Court is to consider for mitigation or provocation is the victim's conduct. This was a drug transaction. It was ongoing between Mr. Jenkins and Berg. Jenkins apparently owed [Berg] money from previous drug purchases, and [Jenkins] was the one soliciting help trying to not pay that drug debt, and suggested that if they help him with this, they maybe also can get some money from Mr. Berg, or some drugs from Mr. Berg.
>
> Mr. Hieb very foolishly agreed to participate in this robbery which has now led to his guilty plea.

Id. at 28.

The state court found "that the factual basis that's been provided is sufficient to allow the Court to accept the Defendant's guilty plea." Id. at 36. In so doing, the state court did not discuss whether the plea was to conspiracy to commit murder or conspiracy to commit felony murder. The court sentenced Hieb to twenty-five years' imprisonment, with five years suspended, and five years of supervised probation. Id. at 39. The state court entered the criminal judgment on December 7, 2005, and the criminal judgment was filed on December 13, 2005. (Doc. #1-5; Doc. #7-4; Doc. #10-4). Hieb did not appeal the judgment of conviction.[4]

Subsequent to Hieb's conviction, the North Dakota Supreme Court decided three cases addressing conspiracy to commit and attempt to commit an unintentional

---

[4] On June 18, 2008, Hieb filed a state application for post-conviction relief, but he later withdrew that application. (Doc. #7-2, p. 1). On July 12, 2010, Hieb filed a motion to reduce his sentence, and the state court denied that motion on August 3, 2010. (Doc. #7-1, p. 4).

crime—State v. Borner, 836 N.W.2d 383 (N.D. 2013), Dominguez v. State, 840 N.W.2d 596 (N.D. 2013), and Coppage v. State, 843 N.W. 2d 291 (N.D. 2014). The three cases are central to Hieb's arguments in support of his petition. This court recently discussed Borner, Dominguez, and Coppage:

> In Borner, the court interpreted the state's conspiracy statute and held that "conspiracy to commit murder requires a finding of intent to cause death and cannot be based on the theory of murder under N.D.C.C. § 12.1-16-01(1)(b), extreme indifference murder," since extreme indifference murder is unintentional. 836 N.W.2d at 386, 391. In Dominguez, the court interpreted the state's attempt statute and held that "attempted murder, under N.D.C.C. §§ 12.1-06-01 and 12.1-16-01(1)(b) [extreme indifference murder], is not a cognizable offense," since "attempt is a specific intent crime, requiring an intent to commit the underlying offense" and "[m]urder committed under circumstances manifesting an extreme indifference to the value of human life results in an unintentional death." 840 N.W.2d at 603. In Coppage, the court granted the petitioner post-conviction relief, concluding that the jury had found him guilty of an incognizable offense—attempted murder under circumstances manifesting an extreme indifference to the value of human life. 843 N.W.2d at 303.

Keller v. Pringle, No. 3:15-cv-107, 2016 WL 3960428, at *3 (D.N.D. June 27, 2016). The Borner court recognized that "conspiracy to commit unintentional murder creates a logical inconsistency because one cannot agree in advance to accomplish an unintended result." 836 N.W.2d at 390 (citation and internal quotation marks omitted).

Although the North Dakota Supreme Court has not addressed felony murder as a predicate offense for a conspiracy charge, other courts have concluded felony murder cannot serve as a predicate offense to conspiracy. In Borner, the North Dakota Supreme Court cited several cases, including Evanchyk v. Stewart, 340 F.3d 933, 939–40 (9th Cir. 2003), which held that conspiracy to commit murder requires an intent to kill and that felony murder therefore may not be the predicate offense for a conspiracy conviction, and State v. Wilson, 30 Kan. App. 2d 498 (2002), which held that conspiracy to commit

6

felony murder is not a recognized crime because "[o]ne cannot intentionally conspire to commit a crime which only requires a mens rea of negligence or no mens rea at all."

On October 7, 2015, after the North Dakota Supreme Court's decisions in Borner, Dominguez, and Coppage, Hieb file a state post-conviction relief application in which he argued, in part, that his conspiracy to commit murder conviction should be vacated since "[t]he State failed to allege that [he] had the intent to cause death[,] . . . the factual circumstances show[] there was no intent to kill [Berg], and . . . the death of [Berg] was [the result of] recklessness or negligence." (Doc. #1-6, p. 7). Hieb further argued that the record shows that the state actually charged him with conspiracy to commit extreme indifference murder or felony murder. Id. at 9-11. The state district court dismissed Hieb's application as barred by the two-year limitation of North Dakota Century Code section 29-31.1-01(2). (Doc. #1-7). Hieb appealed, and the North Dakota Supreme Court affirmed the state district court's order on statute of limitations grounds. Hieb v. State, 882 N.W.2d 724 (N.D. 2016).

Under North Dakota Century Code section 29-32.1-01(2), Hieb was required to file his post-conviction relief application within two years of his conviction becoming final. Hieb did not assert that his application was filed within that two-year limitation period; rather, he contended that an exception to the state's statute of limitations applied. (Doc. #1-6, pp. 3-4). Under North Dakota Century Code section 29-32.1-01(3)(a)(3), the state courts may consider otherwise untimely post-conviction relief applications if "[t]he petitioner asserts a new interpretation of federal or state constitutional or statutory law by either the United States supreme court or a North Dakota appellate court and the petitioner establishes that the interpretation is

7

retroactively applicable to the petitioner's case." Assuming, without deciding, that Borner could have supported the 29-32.1-01(3)(a)(3) exception, the state courts determined that Hieb had not filed his post-conviction relief application within two years of the date of the Borner decision. See Hieb, 882 N.W.2d at 726.

## Habeas Petition

In his petition, Hieb alleges that his due process and equal protection rights were violated because he was convicted and sentenced for an offense that would now be considered incognizable. (Doc. #1, p. 3). Hieb argues that, at the sentencing hearing, he "agreed there's a factual basis to the allegation of Conspiracy to Commit Felony Murder because [he] was involved in a plan to rob the victim" and that he "pled guilty based on those facts." Id. at 7. Hieb also contends that the Second Amended Information did not specify a subsection of the state's murder statute and did not allege that he had "an intent to kill"; he contends, therefore, the state had actually charged him with conspiracy to commit either extreme indifference murder or felony murder. (Doc. #1, p. 7; Doc. #10, pp. 6, 10). Hieb further alleges that the state courts violated his due process and equal protection rights in holding that his post-conviction relief application was precluded from state court review by the state statute of limitations. (Doc. #1, p. 9; Doc. #10, p. 17).

## Standard of Review

Hieb's habeas petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). Under the AEDPA, various conditions must be met before a federal court can consider a petitioner's claims on the merits—the claims must be timely and must be properly exhausted before the state courts. Even when the AEDPA allows

8

the court to consider claims on the merits, the standard of review is extremely narrow. Federal habeas relief may not be granted unless the state court's decision was contrary to or an unreasonable application of federal law, or unless the decision was an unreasonable determination of the facts in light of the evidence presented in the state courts. 28 U.S.C. § 2254(d). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Harrington v. Richter, 562 U.S. 86, 102 (2011). The Court further stated, "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state court proceedings." Id. It is against those standards that the court considers whether Hieb's habeas petition was filed within the AEDPA's time limitations.

### Statue of Limitations

The AEDPA imposes a one-year statute of limitations for filing federal habeas petitions. 28 U.S.C. § 2244(d)(1). The AEDPA's one-year limitation period starts to run from the latest of several possible triggering dates, including the date on which a state court judgment became final by the conclusion of direct review or by the expiration of time for seeking such review, the date on which the constitutional right asserted was initially recognized by the Supreme Court, or the date on which the factual predicate of the claims could have been discovered through exercise of due diligence. 28 U.S.C. §§ 2244(d)(1)(A), (C), and (D). Respondent contends that Hieb's petition is barred by the AEDPA's statute of limitations because he did not file it within one year of the state court judgment becoming final, and further asserts that none of the alternative triggering dates apply.

1.     **Section 2244(d)(1)(A)—Conclusion of Direct Review**

Hieb does not dispute that his habeas petition is time-barred if the triggering date is the date of state court judgment finality. See 28 U.S.C. § 2244(d)(1)(A). The judgment of conviction was filed on December 13, 2005, and Hieb had thirty days, or until January 12, 2006, to appeal the judgment of conviction. See N.D.R.App.P. 4(b)(1)(A). If viewed from conclusion of direct review, Hieb's one-year limitation period for filing a habeas petition started to run on January 13, 2006. Hieb did not place his federal habeas petition in the prison mail until January 31, 2017, (Doc. #1, p. 12), more than ten years after the one-year limitation period expired.[5] Hieb's claim that he was convicted of an incognizable offence in violation of his due process and equal protection rights is therefore time-barred if 28 U.S.C. § 2244(d)(1)(A) applies.

2.     **Section 2244(d)(1)(C)—New Recognition of Constitutional Right**

Hieb does not expressly contend that the one-year limitation period was triggered by the Supreme Court's initial recognition of the constitutional right he asserts; however, he states that in Borner, the state supreme court recognized that the crime for which he was convicted is an incognizable offense, and that the state supreme court held in Coppage that the Borner holding is to be retroactively applied. (See Doc. #10, p. 16). Employing a liberal interpretation, the court therefore considers whether § 2244(d)(1)(C) applies.

---

[5] Hieb's July 8, 2008 state post-conviction relief application, his July 12, 2010 motion to reduce sentence, and his October 7, 2015 state post-conviction relief application did not toll § 2244(d)(1)(A)'s limitation period, because that limitation period had expired prior to Hieb filing the motion and the applications.

The North Dakota Supreme Court's decisions in Borner, Dominguez, and Coppage held that neither conspiracy to commit extreme indifference murder nor attempt to commit extreme indifference murder are cognizable offenses. But, any claim that those state cases triggered the AEDPA limitation period under § 2244(d)(1)(C) must fail. Under § 2244(d)(1)(C), the AEDPA limitation period commences on "the date on which the constitutional right asserted was initially recognized by the [United States] Supreme Court, if the right has been newly recognized by the [United States] Supreme Court and made retroactively applicable to cases on collateral review." In Borner, Dominguez, and Coppage, the North Dakota Supreme Court (not the United States Supreme Court) recognized that under state law (not federal law) an individual cannot conspire to commit, or attempt to commit, a murder that by its definition is unintentional. Since those were not United States Supreme Court cases initially recognizing a federal constitutional right, however, those decisions cannot be deemed triggering dates under § 2244(d)(1)(C).

### 3.     Section 2244(d)(1)(D)—Discovery of Factual Predicate

Hieb contends that the factual predicate of his claim is the North Dakota Supreme Court's recognition in Borner, Dominguez, and Coppage that conspiracy to commit extreme indifference murder, attempt to commit extreme indifference murder, and, by extension, conspiracy to commit felony murder are not cognizable offenses. (Doc. #1, p. 4). He argues that "[b]eing put on notice that his conviction was incognizable and based upon a crime that did not exist is no different that being put on notice of [an] order vacating a predicate conviction." Id. at 8. He further argues that

Borner, Dominguez, and Coppage "have a direct effect on [his] legal status in that he should not have a judgment of conviction for an incognizable offense." Id.

In Johnson v. United States, 544 U.S. 295 (2005), the Supreme Court held that a state court order vacating the petitioner's state court conviction—a conviction which had been used to enhance his federal sentence—was a new fact which triggered the one-year limitation period under 28 U.S.C. § 2255(f)(4).[6] The Court concluded that the order vacating the predicate offense was a fact "subject to proof or disproof," and that the petitioner could not have obtained habeas relief prior to the state vacatur. Johnson, 544 U.S. at 305-07. Hieb's case is distinguishable from Johnson. Unlike Johnson—and contrary to his assertion—Hieb's case does not involve an order which affected his legal status in the underlying action. Hieb does not raise a matter that is "subject to proof or disproof." Although Borner, Dominguez, and Coppage may support his claims, there is no reason Hieb could not have raised his claims prior to those decisions.

Borner, Dominguez, and Coppage interpreted North Dakota's conspiracy and attempted murder statutes. A decision interpreting the law, however, cannot constitute

---

[6] Under 28 U.S.C. § 2255(f)(4), AEDPA's one-year limitation period for federal prisoners to file habeas petitions is triggered on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." Courts have applied AEDPA's one-year limitation period in the same manner in both § 2254 and § 2255 cases. See United States v. Bendolph, 409 F.3d 155, 164 (3d Cir. 2005) (stating that "there exist sound reasons to approach the AEDPA limitations period the same under both §§ 2254 and 2255"); Johnson v. United States, 340 F.3d 1219, 1224 (11th Cir. 2003) (interpreting "the limitations period of § 2255 consistently with the limitation period of § 2244," since "the Supreme Court commonly interprets § 2254 and § 2255 in light of each other") (citing Lackawanna Cnty. Dist. Attorney v. Coss, 532 U.S. 394, 402 (2001)); United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000) (noting that the limitation provisions for §§ 2254 and 2255 are "nearly identical" and that "because of the similarity of the actions . . . federal courts have read them in pari materia as long as the context did not render it improper").

12

a factual predicate under § 2244(d)(1)(D) or a supporting fact under § 2255(f)(5), thereby triggering the one-year limitation period. See E.J.R.E. v. United States, 453 F.3d 1094, 1097-98 (8th Cir. 2006) (a federal court of appeals decision, unlike a predicate conviction, "is a ruling exclusively within the domain of the courts and is incapable of being proved or disproved"); Whiteside v. United States, 775 F.3d 180, 183-84 (4th Cir. 2014) (an intervening change of law is not a fact supporting a claim); Phillips v. United States, 734 F.3d 573, 580 (6th Cir. 2013) (an intervening federal court of appeals decision was newly-discovered law, not a newly-discovered fact); Lo v. Endicott, 506 F.3d 572, 575-76 (7th Cir. 2007) (while a state court's decision modifying substantive law could arguably help the petitioner's claim, the decision did not constitute a factual predicate for the petitioner's habeas claims); Shannon v. Newland, 410 F.3d 1083, 1088 (9th Cir. 2005) ("If a change in (or clarification of) state law, by a state court, in a case in which [the petitioner] was not a party, could qualify as a 'factual predicate,' then the term 'factual' would be meaningless."). Since the North Dakota Supreme Court's interpretation of the law in Borner, Dominguez, and Coppage cannot constitute the factual predicate of Hieb's claim, § 2244(d)(1)(D) is inapplicable.[7]

---

[7] Even if the court were to determine that Borner, Dominguez, and Coppage constituted factual predicates for Hieb's claims, Hieb's habeas petition would still be untimely under the AEDPA's one-year limitation period. The Supreme Court decided Borner on August 29, 2013, it decided Dominguez on December 19, 2013, and it decided Coppage on March 11, 2014. Hieb filed his state post-conviction relief application on October 7, 2015—more than one year after the latest of the North Dakota Supreme Court's decisions, and he mailed his federal habeas petition on January 31, 2017—more than three years after the latest of those decisions.

13

### 4. Equitable Tolling

As a matter of equity, if a petitioner establishes sufficient reason, a court may toll the AEDPA statute of limitations. Holland v. Florida, 560 U.S. 631, 645 (2010). "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 640 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). "Any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Flanders v. Graves, 299 F.3d 974, 976 (8th Cir. 2002). Equitable tolling may be invoked only in rare cases such as "when circumstances over which a prisoner has no control make it impossible to file a timely petition." Id. (emphasis added). Thus, the doctrine of equitable tolling provides an extremely narrow avenue for this court to consider an otherwise time-barred petition.

Hieb does not assert any extraordinary circumstance prevented him from filing a timely habeas petition. Rather, he argues once the North Dakota Supreme Court recognized in Borner, Dominguez, and Coppage that conspiracy to commit an unintentional murder is not a cognizable offense, he timely filed a state post-conviction relief application. (Doc. #1, p. 4). As discussed above, Hieb could have raised his claims prior to Borner, Dominguez, and Coppage decisions. Additionally, as discussed above, see supra Section 3, p. 13 n.7, even if this court were to equitably toll the AEDPA's one-year limitation period through the date of the Borner, Dominguez, and Coppage

14

decisions, Hieb's federal habeas petition would still be untimely. This is therefore not one of the extremely rare cases in which equitable tolling is warranted.

Though it is troubling that the factual basis for Hieb's conviction—as stated by defense counsel[8]—may not have supported a conviction for the crime for which he was sentenced, the undersigned concludes that the only triggering date supported by the record is that of § 2244(d)(1)(A), the date on which direct review of Hieb's conviction was concluded. His federal habeas petition is therefore not timely.

## Noncognizable Claims

Hieb alleges the state post-conviction relief proceedings violated his due process and equal protection rights by holding that his post-conviction relief application was precluded from review under the state statute of limitations. (Doc. #1, pp. 9-10; Doc. #10, p. 17). The court thus considers whether those claims are timely. Section 2244(d)(1)'s statute of limitations applies to each claim within an application, see DeCoteau v. Schweitzer, 774 F.3d 1190, 1192 (8th Cir. 2014), and Hieb filed his January 31, 2017 federal habeas petition within one year of the North Dakota Supreme Court's July 20, 2016 decision that Hieb's claim is barred by the state statute of limitations, so his claims alleging due process and equal protection violations in the post-conviction proceedings are timely.

Hieb recognizes that this court is generally bound by the state courts' interpretation of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). But, citing

---

[8] As noted above, defense counsel stated that defendant agreed to plead guilty on facts supporting conspiracy to commit felony murder, though the information charged conspiracy to commit murder.

McDonald v. Bowersox, 101 F.3d 588 (8th Cir. 1996), Hieb claims an exception to that general rule, since he alleges that the state courts' application of state law violated his federal constitutional rights. (Doc. #10, p. 18). However, McDonald involved a challenge to a state procedural rule applicable to trial and sentencing, not to post-conviction relief proceedings. See McDonald, 101 F.3d at 593. A petitioner "is not necessarily afforded constitutional protections" for "the alleged violation of a state rule concerning post-conviction proceedings." Simpson v. Norris, 490 F.3d 1029, 1034 (8th Cir. 2007) (citation and internal quotation marks omitted). Therefore, McDonald is not applicable to Hieb's claims regarding the state post-conviction proceedings.

Alternatively, quoting Aponte v. Gomez, 993 F.2d 705, 707 (9th Cir. 1993), Hieb contends that this court is not bound by the state courts' interpretation of the state statute of limitations, since the state courts' interpretation was "untenable or amount[ed] to a subterfuge to avoid federal review of a constitutional violation." (Doc. #10, p. 18). But, Hieb alleges no facts to support that conclusory allegation. Under North Dakota Century Code section 29-32.1-01(2), Hieb was required to file his post-conviction relief application within two years of his conviction becoming final. Before the state courts, Hieb asserted an exception to the state's statute of limitations. The state courts determined that even if that exception applied, Hieb's post-conviction relief application would nonetheless have been untimely. See Hieb, 882 N.W.2d at 726-27. Hieb has not established that the state courts' interpretation of the state statute of limitations was untenable or a subterfuge.

Finally, Hieb contends that the doctrine of constitutional doubt should apply because the state statute of limitations "deprives [him] of a remedy to vacate his

16

conviction and sentence from a crime that does not exist" in violation of federal due process and equal protection rights. (Doc. #1, p. 4). The doctrine of constitutional doubt requires courts to favor a statutory construction that avoids "a serious likelihood that the statute will be held unconstitutional." Almendarez–Torres v. United States, 523 U.S. 224, 238 (1998). The doctrine of constitutional doubt applies only when a statute is ambiguous—the statute "must be genuinely susceptible to two constructions." Id. This court does not consider North Dakota Century Code sections 29-32.1-01(2) and (3)(a)(3) to be ambiguous, and so will not apply the doctrine of constitutional doubt.

Despite his arguments to the contrary, Hieb is not entitled to relief on claims challenging application of the state statute of limitations to his post-conviction relief application, since "there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, [and] infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." Williams-Bey v. Trickery, 894 F.2d 314, 317 (8th Cir. 1990) (citation omitted). Hieb's claims that the state courts violated his due process and equal protection rights by finding that his post-conviction relief application was barred from review is therefore not cognizable in a federal habeas petition. Id.

### Recommendation

Hieb's claims regarding his guilty plea are barred by the AEDPA's statute of limitations, and he is not entitled to equitable tolling of the AEDPA one-year limitation period. Hieb's claims regarding the state post-conviction proceedings are not cognizable. Accordingly, it is **RECOMMENDED** that the respondent's motion to dismiss, (Doc. #6), be **GRANTED**, and Hieb's petition for habeas relief, (Doc. #1), be **DISMISSED** with prejudice.

In light of the issue concerning the factual basis for Hieb's guilty plea, an appeal may not be frivolous, and the undersigned therefore **RECOMMENDS** that, if the district judge adopts the recommendations made in this report, a certificate of appealability be issued if one is requested.

Dated this 16th day of May, 2017.

    /s/ *Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

### NOTICE OF RIGHT TO OBJECT[9]

Any party may object to this Report and Recommendation by filing with the Clerk of Court no later than **June 2, 2017**, a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Failure to object or to comply with this procedure may forfeit the right to seek review in the Court of Appeals.

---

[9] See Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.